SARAH A. BASDEN, ADMINISTRATRIX OF THE ESTATE OF EDWARD DENNY BASDEN, DECEASED v. MORRIS LEE SUTTON, ORIGINAL DEFENDANTS AND JOHN ISAAC COOPER AND ARCHIE LEON LANIER, ADDITIONAL DEFENDANTS

No. 694SC414

(Filed 17 December 1969)

**1. Automobiles § 51— accident case — excessive speed — wet highway — nonsuit**

Evidence tending to show that, at the time defendant's automobile struck plaintiff's intestate, the defendant was driving at a speed of 60 mph in a 55 mph zone, that the highway was wet, and that it was nighttime and raining, *held* sufficient to make out a *prima facie* case of defendant's negligence in driving in excess of 55 mph. G.S. 20-141(b)(4).

**2. Automobiles § 30— speed restriction — 55 mph**

A violation of G.S. 20-141(b)(4) relating to the 55 mph speed restriction is negligence per se.

**3. Negligence § 13— contributory negligence — duty to use ordinary care**

The law imposes upon a person *sui juris* the duty to use ordinary care to protect himself from injury, and the degree of such care should be commensurate with the danger to be avoided.

**4. Automobiles § 83— accident case — contributory negligence — pedestrian — nonsuit**

In an action by an administrator to recover damages for the wrongful death of her intestate, the administrator's evidence *is held* sufficient to establish the contributory negligence of her intestate as a matter of law, where it tended to show that the intestate was assisting several persons in removing tobacco that had fallen on the highway from an overturned truck, that the intestate was last seen standing on the shoulder of the highway as defendant's car approached at a rapid rate of speed, and that after the accident the intestate's body was found in the west lane of the highway under tobacco and partially under the defendant's car.

APPEAL by plaintiffs from *Cohoon, J.,* 10 March 1969 Civil Session, DUPLIN County Superior Court.

Plaintiff seeks to recover damages for the wrongful death of her intestate. It was stipulated that plaintiff is the duly qualified administratrix of the estate of Edward Denny Basden; that Edward Denny Basden died on the night of 2 October 1964; that on that night, John Isaac Cooper was operating a pickup truck as the agent of Archie Leon Lanier and within the scope of his employment; that Archie Leon Lanier was the owner of the pickup truck; that at the time of the trip leading up to the accident, Norman Whaley and Edward Denny Basden were riding in the truck which was pulling a trailer; that Whaley had his tobacco in the truck and Cooper and Basden

had their respective loads of tobacco on the trailer in separate piles; that the truck was being driven to Wilson, North Carolina, so that the tobacco of all three could be sold on the Wilson market; that Lanier, as landlord, had an interest in the tobacco of Cooper and Whaley.

Additional defendants Cooper and Lanier were brought in by motion of original defendant Sutton upon his cross action against them for contribution.

The evidence, viewed in the light most favorable to plaintiff, tends to show:

N.C. Highway 111 runs in a north-south direction from Kenansville northerly to Goldsboro. North of the scene of the accident complained of is a slight curve. From the curve to the collision scene is four-tenths of a mile. From the collision scene south the road is straight but is uphill. The paved portion of the road is 20 feet 7 inches wide, and the shoulder is 12 feet 10 inches wide. The truck in which plaintiff's intestate had been a passenger was headed in a northerly direction, and had come down the hill toward the Lane house which was situate on the east side of the highway. The highway was wet, and it was raining. The truck's headlights were on low beam. The trailer, attached to the truck "swung to the right and went back to the left and popped two bolts in the tongue and overturned." The tobacco landed on the left-hand lane, or southbound lane. A clear plastic cover, which had been on the bottom of the trailer, was on top of the tobacco. The pile of tobacco on the highway was about 3½ feet high and about 8 feet wide. The truck and trailer were pulled to the side of the road with about a foot of the truck and about a foot of the trailer on the paved portion of the road. The headlights remained on low beam and the trailer remained overturned. The occupants of the truck got out and were standing at the rear thereof deciding what to do when a motorist came by, stopped, and left with them a flashlight while he went to call a patrolman. One of the truck passengers went to get another truck with which to haul the tobacco away from the scene. Plaintiff's intestate, Cooper, and Whaley began moving the tobacco from the highway to the shoulder of the road. Whaley testified that "In between cars we laid tobacco aside and Mr. Basden would catch them coming from the south and I catch them coming back. I mean by 'catch them' to flag them. As to how we flagged them, we would go to the back of the pickup and wave the light back and forth across the road." The distance from the pile of tobacco and the rear of the pickup truck was 80 feet 4 inches. At least two cars had come

from the north after the first motorist stopped and before the Sutton car. To flag the cars from the north Whaley stood in the left lane at the rear of the pickup truck and waved the light back and forth across the road. There was sufficient room for vehicles to get by the truck and tobacco. Vehicles coming from the north remained on the paved portion and took the east lane of traffic. The four vehicles which were flagged going north followed their same lane of traffic and cut around the pickup a little bit. At the times cars were not coming, the flashlight was used for the purpose of furnishing light to lift the tobacco off the highway onto the shoulder of the road. When the Sutton car was first seen approaching, the three men were at the south end of the pile of tobacco. "All of us were standing on the shoulder of the road." Basden handed Whaley the light and said "catch that one". Whaley saw the headlights of the Sutton car as he crossed the river bridge, which is "just before that curve". "When you come off that bridge you take the curve." Whaley testified that he observed the Sutton car approach for better than one-half a mile and, in his opinion, its speed was about 60 miles per hour. The Sutton car did not reduce its speed. When Whaley started flagging, the Sutton car was four-tenths of a mile away. When the Sutton car got pretty close to him, about 20 feet, he jumped off the road. The Sutton car passed him and struck the pile of tobacco, went up and came down and settled on top of the tobacco. Whaley next remembered Cooper coming from the field. He testified "The last time I saw Mr. Basden he was on the shoulder of the road. Cooper, the last time I saw him before the accident occurred, was on the shoulder too." Basden's body was found on the west side of the highway under tobacco and partially under the front of the Sutton car. There were no marks on the pavement leading from the tobacco back to the north.

At the close of plaintiff's evidence, defendant's motion for judgment as of involuntary nonsuit was granted, and plaintiff appealed, assigning this as the only error.

*Wallace, Langley and Barwick by R. S. Langley and F. E. Wallace, Jr., for plaintiff appellant.*

*Marshall and Williams by Lonnie B. Williams for original defendant Sutton appellee.*

*Gavin and Gavin by Vance B. Gavin and Rivers D. Johnson, Jr., for additional defendants.*

MORRIS, J.

Plaintiff's exception and assignment of error presents two questions on appeal: (1) Did plaintiff offer sufficient evidence to make out a *prima facie* case of actionable negligence against the defendant? and (2) If so, does plaintiff's evidence establish the contributory negligence of her intestate as a matter of law?

The law imposes upon a motorist certain positive duties and requires of him constant care and attention.

> "He must at all times operate his vehicle with due caution and circumspection, with due regard for the rights and safety of others, and at such speed and in such a manner as will not endanger or be likely to endanger the lives or property of others. G.S. 20-140; . . .

> He must operate his vehicle at a reasonable rate of speed, keep a proper lookout for persons on or near the highway, *Cox v. Lee, ante* [230 N.C.], 155, decrease his speed when any special hazard exists with respect to pedestrians, G.S. 20-141(c) . . ." *Williams v. Henderson,* 230 N.C. 707, 55 S.E. 2d 462 (1949).

[1, 2] There was evidence here that Sutton was operating his car at a speed of about 60 miles per hour at a time when the highway was wet, when it was raining, and at a place where the posted speed limit was 55 miles per hour. G.S. 20-141(b)(4) makes it unlawful, in this circumstance, to operate a passenger car in excess of 55 miles per hour. A violation of G.S. 20-141(b)(4) is negligence *per se.* *Price v. Miller,* 271 N.C. 690, 157 S.E. 2d 347 (1967).

We think the plaintiff offered sufficient evidence of actionable negligence on the part of defendant Sutton to carry the case to the jury.

[3] The crucial question remains of the contributory negligence as a matter of law of plaintiff's intestate.

> "The law imposes upon a person *sui juris* the duty to use ordinary care to protect himself from injury, and the degree of such care should be commensurate with the danger to be avoided. (citations omitted.)" *Rosser v. Smith,* 260 N.C. 647, 133 S.E. 2d 499 (1963).

[4] Plaintiff's own evidence shows that her intestate was standing on the shoulder of the road when the Sutton car was seen approaching at a rapid rate of speed. His body was found in the west lane of the highway partially under the Sutton car. The conclusion is inescapable that he left a position of safety and placed himself

in a position of danger with full knowledge of all the circumstances and the danger inherent in attempting to remove tobacco until the approaching car had passed. The evidence is that one of his companions jumped from the path of the oncoming car and one went in the field. Plaintiff's intestate failed to exercise ordinary care to protect himself from injury.

It is manifest from plaintiff's own evidence, which is all the evidence, that the negligence of her intestate was at least a proximate cause of his injuries and death. In our opinion, no other conclusion can reasonably be drawn. The judgment of the trial court allowing the motion for nonsuit must, therefore, be

Affirmed.

MALLARD, C.J., and HEDRICK, J., concur.